Again, Mr. Hankel, please proceed when you're ready. Again, Aaron Hankel, on behalf of American Science and Engineering, May I please support? I will try to speak slower this time. I have been informed that I was speaking too fast last time, and I apologize. You were fine with me, but I could hear you fast. It's okay. This appeal involves another anticipation question, a fairly straightforward one. Since this Board's founding in 1982 and its earliest decisions, it has not minced its words on the requirements for anticipation. A prior art disclosure – Wait. You say this Board's founding in 1982? This Court – Did you just make me an administrative judge? I apologize. Of course not, Your Honor. A prior art – They're good people. Yes. A disclosure that almost meets the anticipation standard may render a claim invalid under 103, but it is not anticipation. As the Court said in that money in, any differences between the prior art reference and the claimed invention, however slight, invoke questions of obviousness, not anticipation. That is the sole issue that I would like to focus today's argument on, is the Board's anticipation finding of the 701 patent over SEPI. There is simply no textual basis expressed or inherent to support the Board's finding that the SEPI reference discloses backscattered detectors that are capable and positioned, as the claim says, disposed to receive backscattered radiation from two X-ray beam sources. That's just not in there. In fact, the entire disclosure of backscattered detectors comes from a one-sentence statement in one paragraph of SEPI at Appendix 699 – I apologize – Appendix 10, where the Board quotes, Additional detectors that are not shown may be provided between sources 16A through F in the cargo container to detect backscattered radiation. That is the Board's entire support textual in the SEPI reference to find that it discloses backscattered detectors that are positioned and disposed to receive X-rays that are backscattered from plural X-ray sources. It's the sole issue on appeal with respect to anticipation, and it's fatal to the Board's anticipation analysis. The first error that the Board committed was finding that that single-line statement provides some sort of express or inherent disclosure of the claimed scatter detectors of the 701 patent. The only details we know about the scatter detectors in SEPI is that they are not shown and that they may be provided between the X-ray sources and the cargo container. That is all we are told. Anything else, any other additional inferences that the Board drew are not expressed or implied in SEPI itself or anywhere else. We have no details about how many additional detectors there may be between the cargo and the X-ray scanners. We have no idea about their size or the energy levels of the radiation sources themselves. We have no information about their proximity to the X-ray sources relative to their proximity to the cargo container. We don't know if they're shielded. We don't know if they have obstructions between them and the backscattered radiation. Frankly, we don't know if they're in the same plane as the X-ray sources and the cargo containers that's depicted in the SEPI figure. In fact, we have unrebutted testimony from AS&E's expert, Dr. Smith, at Appendix 2565-2566, that said a person of ordinary skill in the art would not place backscatter detectors in between the cargo container and the X-ray sources because it would cause interference with the type of source. So is part of your argument here that the Board essentially did not provide adequate information to explain its reasoning as to some of the conclusions? Is that part of it? I would say that's an aspect of it. That's not our primary argument. That SEPI does not contain this information. It does not provide it either expressly or inherently. And for that reason, the Board obviously was unable to articulate where those disclosures were for reference. Those details matter because when we're talking about backscattered detectors, the traditional approach in the art was to shield them so that they only received backscattered radiation from one source. Otherwise, there's a problem in the art known as crosstalk, where one detector is receiving radiation that it's not supposed to receive. The Board just throws this all aside and bases its anticipation analysis on the fact that it's possible that backscattered detectors can receive backscattered radiation. That is the whole of the analysis, and that is not disputed. But these claims don't contain just any type of detector that can detect backscattered radiation. Each of the detectors must be disposed to receive backscattered radiation from both the first and second pencil beam sources. That was the novel advancement, in addition to the fact that the sources are coplanar, which provides a limited footprint. But for purposes of anticipation, really the detector issue is what it's all about. I haven't heard you say this, but I thought one of your main arguments was that you thought the Board erred in relying on CEPI's additional detectors language. Is that not what you're focusing on at all? That is what I was focusing on. It's the quotation from CEPI at 14, 9 through 25. One line from the paragraph says additional detectors not shown may be provided between the sources, 16A through 16F, and the cargo container, 14, to detect backscattered radiation. That positioning in between the cargo container and the sources, according to the Board, and the fact that backscattered detectors can receive backscattered radiation, apparently meant that they were disposed to receive radiation that's backscattered from two sources, which is just simply not the case. It's not disclosed. It's certainly not inherent for the reasons that I have described. We know that based on some of the petitioner's own expert testimony, where he says, if those backscattered detectors are placed in the same plane, and if they're unshielded and not otherwise obstructed, then the mathematics or the physics of X-ray backscatter means that they would receive from both sources. Counsel, is the relief that you're arguing for right now a full reverse, or are you seeking a vacate and remand, or just sum up right now what you think this Court would be well-positioned to do if it were to find in your favor? The anticipation analysis was flawed and not supported a full reversal on that grounds as warranted. To the extent the 103 analysis comes into play, the argument there that we may— What do you mean, to the extent it comes into play? It's different claims, right? So it has to come into play. Dependent claims. Yeah, but it has to come into play, doesn't it? I mean, if it comes into play. I mean, the Board didn't find those dependent claims anticipated, right? They found them obvious. Correct. And so you don't want us to address that then? You're like, no, just going to let that one go? No, that's a fair question. It's premised on CEPI's anticipation analysis, and then it relies on two additional references for the additional details of the dependent claims. For example, wherein the X-ray source is an electromagnetic scanner, or wherein the X-ray source is a rotating chopper wheel. The secondary references are to provide support for the additional dependent features, not to cure or solve any omissions or failures in the CEPI reference itself. So you think that if we decide with you on the CEPI reference with regard to anticipation, that obviousness is gone? Correct. Okay, I didn't understand that. What about waiver? You haven't addressed waiver, and the PTO says that the argument that you've just been making with regard to anticipation and the detectors was waived. Correct. I know the board made that argument, and frankly I was somewhat taken aback by that because it was not made by the petitioner on their original reply, and they were parties to their proceedings before the board. The issue was not waived at all. In fact, I don't think it could have been preserved more. It's our primary and only appeal argument. It's been our argument that we've made to the board. Obviously we lost on it, but it was made and presented. The issue that I find that the director takes with the way we phrase things in our blue brief is that we didn't use or repeat antecedent terms. Do you want to point us to precisely where in the record the issue was made so that we can see for ourselves that it was preserved properly? Yes, at appendix 274 and 275. I can give you quotes, but there what we're saying is that CEPI does not disclose detectors that receive radiation from a first beam and a second beam. We didn't say that the first beams and the second beams have to be substantially perpendicular, but that's an antecedent feature of the claimed arrangement. Our argument has been and is now. But that's what the board said you abandoned. They said that you abandoned the substantially perpendicular argument in favor of arguing CEPI fails to disclose detecting scattered radiation from any particular combination of beams. So that's the thing they say you abandoned, right? That's their characterization of the argument. But how do I—so you're saying you did not abandon that, correct? Correct. Okay, so where do I see that you didn't abandon the substantially perpendicular argument? I don't think we used those precise words. Okay, well, how about if you just say 90 degrees then? What do you say? What do you say that leads me to the fact that you are keeping the substantially perpendicular argument and continuing to maintain it? Okay, appendix 275, there's a paragraph that begins, CEPI does not disclose sizes and positions for detectors. And there we just say broadly it doesn't disclose them that receive from both. Open paren, IE, beams from sources 16A and 16E. Those are the perpendicular sources that were identified to the board by Viking. 274 through 275 and it goes over to 276. This was our argument. And I will grant Your Honor's question. Our broader argument is that it doesn't disclose a detector that receives from plural sources at all. Whether or not they're perpendicular doesn't matter. It just doesn't have that disclosure. Because it doesn't disclose that, it obviously doesn't disclose the very specific arrangement that's required in the NSC. Would you have to have made that in the alternative? I mean, I'm just trying to understand. If you are saying, look, we don't think you disclosed two of these at all, do you have to say, and if you disagree, then we also don't think those two are perpendicular. Do you have to make that in the alternative to make sure the office is aware that you're continuing to maintain that argument? I just don't know. That's a great question. I honestly don't know either. I don't think that's the right result. I think it would result in, frankly, cumbersome briefing and arguments to the court if every antecedent requirement of a patent had to be carried through on every time it's used down the claim, which is essentially how I understand this argument. Claim one says first beam source. The second part says the second beam source, and they're substantially perpendicular. And then the detectors must detect from both of those, and we said that's not present. So you're really pointing to the part that's in parentheses about the beams from choice with 16A and 16E say that's how you get the perpendicular argument out there and preserve it, right? Yes, those are the perpendicular beams that were identified to and relied upon by the board. That is what they found as anticipatory. And with that, I can yield my time and support us for the questions.  Okay. Counsel, please proceed. Good morning, Your Honors. May it please the court. I'd like to start off with two kind of preliminary issues. First, on the question of whether the relief they would be seeking is reversal as opposed to vacate. Here, the board did not reach a number of grounds because the other grounds were sufficient to dispose of the claim before it. So I think that even if they were to prevail on the anticipation of these arguments here, the appropriate result would be vacate and remand, not a reversal. Yeah, we vacate and remand, but there's no petitioner anymore, right? Correct. So certainly, if it were to go back, they'd have the ability to move to terminate, and oftentimes the board grants that. Even more likely in these days. Yeah, I certainly don't disagree with that.  And second, to address the waiver issue, our contention was that AS&E waived reliance on the substantially perpendicular aspect of the detecting limitation, and from the gray brief, I understand that they are no longer relying on the substantially perpendicular aspect of the detecting limitation. So from our perspective, waiver is no longer an issue considering they are now relying on that. Okay, maybe I'll ask him directly, maybe when he gets back up, if that is the case. Sure, and the site for that would be gray brief 18. And then, so, my friend focused on anticipation only, and so I'll direct my argument only to anticipation, unless the board has other questions. On anticipation, the parties agreed that the operative sentence in CEPI discloses additional detectors. It says that those additional detectors are located between the sources and the carbon container, and it says that the additional detectors detect backscattered radiation without any sort of limitation as to which sources each of those additional detectors detect radiation from. And the question for this court is, was it reasonable for the board to conclude, based on CEPI's disclosure, that those additional detectors detect radiation from at least two of the six CEPI sources? It's our contention that it is. The kind of part and parcel of the idea of scattered radiation, and Dr. Lanz explained this. Can you explain to me, is it your view that this is inherency or that it is affirmatively disclosed? The board did not expressly invoke inherency, so the way I understand the board's decision is that this is how a person of ordinary skill and art would read the reference. I think that you could also look at this... It may have helped for the board to expressly choose one option over the other, but I think that not choosing it would be at most harmless error. I think that it's important to recognize that the idea of scattered radiation means that radiation is going everywhere. It's not like transmitted radiation, where it's going to be directed at a particular point. This is kind of what Dr. Lanz has said, that if you have these detectors located between the sources and the cargo container, as long as they're not purposely shielded, they're going to receive some of the scattered radiation. I heard counsel here argue today that there's no indication whether they're shielding or not, but Dr. Lanz also said, and this is not disputed between the parties, that the only thing the additional detectors can do is detect that scattered radiation. If that's all they're doing, it would make no sense to shield them from being able to do so. There are other portions of SEPI where it actually describes certain detectors being shielded. The absence of any discussion within the operative section of SEPI saying that any of these additional detectors are shielded, I think further shows that there is no shielding. I told you the board didn't say that. The board didn't say any of that. That's an excellent argument. What do I do with that? The board did credit Viking's position, which cited Dr. Lanz's testimony. I think the way to deal with that is to say that Dr. Lanz's explanation of how SEPI works was persuasive for them. Where do I see a statement, even if the board didn't logically walk through things the way you just did, which is very sensible, where do I see that they nonetheless adopted that logic of the expert, even if they didn't articulate it? Where's the best place in the opinion that I can see the board adopting that logic? That would be on Appendix 19. It's the second and third sentences. The once again? Yes, once again, AS&E disregards Viking's expressful alliance on SEPI's disclosure. There they're crediting Petition 2425, which I believe is at Appendix 81, 82. Appendix 82 cites Dr. Lanz's testimony regarding the additional detectors detecting backside of radiation. Yikes, that's a little attenuated. Even if this is not a perfect cite to Dr. Lanz's testimony, the board added that the sources are all turned on, they're all cycled. Where do they say that? To the extent that... Same page? Yes, right afterwards. To the extent that AS&E attacks Viking's showing as to how SEPI's detectors detect X-rays from both the first and second pencil beams, we know that Viking relies on SEPI's operation of the pencil beam sources being cycled, so that only one source may be on at a time. But one source being on at a time is different from detecting both sources. Right, so there's no requirement in the claims that you detect them simultaneously. And the claim actually requires temporal interspacing. I understand that. The point being that the statement about one source being on at a time doesn't necessarily address the question of whether the beams are detected by both detectors. Right, and so the next sentence states, as discussed earlier, photomultipliers are indisputably capable of detecting scattered radiation from cycled pencil beams originating from X-ray tubes. So the board there is saying that when you're cycling these beams, the detectors that are disclosed in SEPI are capable, in response to rejecting the argument that was before it, that they are capable of detecting radiation from multiple beams. So they're capable, therefore the board surmises that they will both detect. Right, I acknowledge that the board's language here of capable as opposed to they will detect, maybe that's not completely clear, but I think that in the context, what they're doing is they're rejecting AS&E's argument. There's nothing that says that, you know, one of ordinary skill in the art would understand that they would both detect, or something of that sort. So the way I read this is that their response to the argument is that the detectors aren't disposed in a manner such that they could be detecting backscattered radiation. And so they're saying that, well, the way we read SEPI, one of ordinary skill in the art would understand that these detectors are in fact capable of detecting. Yeah, it's the board's surmising conclusion. Well, I think, so the board went through a significant analysis as to what these detectors are capable of. The primary dispute before the board was this idea that SEPI's really just a transmission system. And so its detectors can't detect backscattered radiation. And so the board went, kind of, a thorough analysis that showed that the detectors that are described here are detectors that can detect backscattered radiation. Yeah, I understand. So you're doing a good job of kind of explaining to us what you think the board was really doing, but you have to agree with us, it'd be even better if we could just read that right on the page. Of course, of course. And do you disagree with possibly a vacate and remand just to better explain what's actually in the opinion? Like, I feel like you're giving us a Rosetta Stone, but I think we should be able to read that without needing your Rosetta Stone. Well, you know, I think that in this case a remand wouldn't be necessary because at most it's harmless error. The fact that... I guess the reasonableness of the conclusion that SEPI discloses the detectors... I don't see how it's harmless error. I can be sure. I mean, yes, detectors are capable of detecting. Of course they are. It's, like, inherent in the name of what the thing is. But how do I know that they're turned on and doing it all at the same time? I mean, how can I... Doesn't that feel like an ordinarily skilled artisan kind of determination? Well, I think the idea that they're turned on is part and parcel of the statement in SEPI that they detect backscattered radiation. And so I think that they are being used in that situation. They are capable of detecting radiation from multiple sources. And SEPI itself says that they detect backscattered radiation. So they are, in fact, being used in that way. It would be unusual if they didn't. Agreed. And so the whole point in this section of SEPI is to use these additional detectors to detect scattered radiation. So if you're not using them in that, they serve no purpose within the disclosure of SEPI. I know that you're saying that opposing counsel is not dealing with the waiver argument anymore, but could you actually respond to what they point us to on appendix page 275? Certainly. Sure. Do you agree that... Well, go ahead and find it. You can turn to it. But once you get there, do you agree that that reference to what I believe was 16A and E would preserve the perpendicularity argument and help present it? So I think it's a close question, but I think that just referencing the sources 16A and 16E is, in my view, not enough to sensitize the board to this idea that the perpendicularity of these sources is important. They are, of course, reciting Likens' characterization, but they're not saying that there's anything special about sources being perpendicular inasmuch as the detectors detect radiation. And so, based on that, and considering they did raise the argument in their preliminary papers, I think it was reasonable for the board to conclude that that's no longer an issue. And our point was that that's why the board didn't address, expressly address, the substantially perpendicular aspect of the detecting on the paper. Could I get you to turn to page 20 of the board's decision, and in particular, this is the motivation to combine section. Where does the board articulate exactly what the motivation is to combine CEPI with Chalmers? What on these pages does the board give us in the form of a motivation? Or maybe it's somewhere else in the opinion, too. Sure. My understanding is the only argument on motivation was whether CEPI focused on CT sources. That was the only argument that was presented in the blue brief with respect to motivation. But I'd have to look at this to see what the express motivation was. Well, I mean, they argue whether substantial evidence supports the board's finding a skilled artiman would have been motivated to make a combination. So I'm looking to see what did the board say? What was the board's reason the combination would be made? All right, so the whole idea here was that replacing the rail... I don't want the whole idea. I want you to tell me what sentence articulates the motivation. Because all I see, I'm just going to be honest with you, all I see in this opinion is the board saying, and I'm just going to quote to you, because they're both analogous art from the field of x-ray backscatter inspections and both teach using temporally interspersed beams to avoid crosstalk. I don't see anything else. And I mean, surely we can agree that just because two references are in the analogous art, that does not satisfy the motivation to combine. Of course. Right? Absolutely, I agree. So what is the reason that the board gives that they find persuasive that a skilled artisan would make this combination? Sure, and so I think where the board guesses that is the second sentence in that first full paragraph. In doing so, Viking provides a detailed mapping of how a sub-beam meets each of the different limitations while also providing a reason to combine their respective teachings. So I read that sentence as crediting Viking's motivation to combine. And then in the next phase, they address the argument on motivation to combine, which is again the CT scanning issue. Okay, wait, how do you read that as crediting? I mean, Viking provides a detailed mapping of how it meets each claim limitation, and it also provides a reason to combine, but that's not, I mean, yeah, they provide a mapping, and they provide a reason, but is the board adopting that reason? That's the way I read the sentence, because the only dispute before the board in terms of motivation was the CT scanning issue. So I don't think it was necessary for the board to recite what the petition recited in terms of motivation to combine, when the only argument wasn't that that's not, in fact, a motivation. Their argument was really, does Sethi's disclosure on CT scanning render this kind of an inoperable combination? And again, that's the argument that they present. The petitioner has the burden of establishing, and the board has to find there's a motivation to make this combination, right? Right. I see that, it seems like it's in dispute whether there's a motivation to combine it. Right, and the heart of that dispute is, is Sethi directed to CT scanning? And that's what the board, especially, You think that their only challenge was whether or not it was analogous arts, basically? Whether or not the combination renders Sethi inoperable for its intended purpose. And so you're principally relying on the site to see it at 30 to 39 to support up some additional support for the motivation to combine plan? Is that what your argument was? So in this context, that wasn't disputed. So the answer is yes? Yes, in this context. I'm not sure that that would necessarily be true in every context. So for example, if you had argued that a person learning a skill in the art would be motivated to make the combination because it makes it more efficient, and they come back and say, no, it wouldn't make it more efficient, then maybe this wouldn't be sufficient. But in a situation where you're, where the argument is that there's a motivation, and the response is, if you do that, you render the references, the primary reference inoperable, then I think it is sufficient, as long as you address the inoperability question. So in your view, at least in this circumstance, out of your memory, do you believe that the PTAC could just incorporate the party's brief by reference to further support up its purported findings on what they should combine? I think that the board doesn't need to reproduce the petition's motivation, where it's not disputed. Where the crux of the argument in terms of motivation is not disputed. Can I ask you a slightly different question? Do you have your brief handy? On your secondary considerations argument, it's on page 43. Tell me when you're there. In the header, you say, substantial evidence supports the board's finding that the secondary consideration evidence doesn't overcome a strong prima facie case. Why do you think that's a fact question? That is exactly the balancing or weighing of the four factors. Isn't that obviousness? I mean, obviousness is the question of the law, right? Right. And so, this isn't about whether one of the factors is or is not established. That would be a question of fact. This is about how do you weigh them once they are established. So, my understanding based on the briefing was that that was not disputed. No, no, I'm telling you, I think the PTO has erred in its statement that this is a question of substantial evidence. Read your header and tell me if you agree. So, I agree that we're proposing this issue. And I've seen my time's up. So, we had cited the Novartis case. No, I'm not asking you what you cited, although if you're going to point me to a question, if you'd like to point me to a site that says when you weigh the four factors, that's a fact question and we've got to defer to it, that'd be great if you have a site for that. I don't know of any site for that because it feels to me like that's the de novo legal question. Sure. So, where we got that was from the Novartis case, which, if memory serves, said that the persuasive value of secondary considerations has been reviewed for substantial evidence. And so, I guess what we took from that was that the board's conclusion here, in terms of weighing the different factors, was a question of substantial evidence. You don't have anything handy you can point me to for where that is, because weighing the factors against each other, I don't know, what would the obviousness legal part be if it weren't that? Sure. I can tell you where you're coming from. We cited that case on... ...on page 24. Well, that's the factor. Whether objective indicia support a finding of non-obvious, that's if is there commercial success, right? That's establishing each individual factor is a question of fact. But the weighing of them, I mean, at least the quote that you have there doesn't... Sure. And now that Your Honor points that out, I can see how Your Honor is reading that sentence, and so maybe it doesn't say, it doesn't support the way we have touched the issue. The way we have read that sentence, and that's kind of the base for our header there, was that it suggested that the comparison of the primary case against the secondary considerations was a fact question. But it's not. Sure. I mean, you have some case that says that's a fact. That's the law. That's the obviousness question, right? That's the de novo review question. I'm not aware of a case that speaks directly to that issue one way or the other. Well, if it wasn't the weighing that was the law part, what would be the law part? Well, I think that... So, for example, the idea that you need a motivation to combine. That's part and parcel of making an objective. That's kind of a legal requirement. So you think only articulating the obviousness test itself is a question of law, but actually you don't see anything in the application of that test that's a question of law? Your Honor, I am not aware of it one way or the other. I don't have a strong answer one way or the other in terms of whether any sort of weighing could be a question of law there. I'm not aware of a case addressing that. I've got to be honest. I thought that was sort of like a 101 patent law sort of thing, and I don't mean Section 101. I mean like basic, like the weighing of the factors is the legal part, but I don't know. Okay. Well, I don't have anything else. Is there anything else? Thank you, Your Honor. Okay. Thank you, counsel. Thank you. Thank you, Your Honors. I believe I have questions to respond to, first and foremost on the issue of waiver. We're going to bring that back up. I think my colleague quoted the final written decision where the board said something along the lines to the extent ASME attacks some certain factual finding. We disagree because they're capable of detecting backscattered radiation. I think that's all the evidence you need to find that this issue was preserved. It was considered and rejected by the board. It was presented to this court on appeal. I mean, he said that waiver, he doesn't understand waiver to any longer be an issue because in your gray brief, you say you're not relying on the substantially perpendicular argument anymore. Is that inaccurate? It's not inaccurate. Our position is it doesn't disclose detectors that detect from plural sources at all, whether they're perpendicular, parallel, or any other sort of arrangement. So that 90-degree disposition is no longer an issue. It is not material to the anticipation question. To Your Honor's question about weighing of factors, I tend to agree that it is obvious this is a question of law, but I'm not aware of any particular citation I can give you on that precise point, like my colleague. But that was my understanding as well. If you have any further questions, please let me know. Otherwise, I would just quickly like to return to some of the anticipation argument we just heard. If you look at the record, what Viking presented to the board on anticipation was originally premised on these detectors 20, which are on the other side of the figure of CEPI. We pointed out on reply whether those were not appropriate, they're the wrong type of detectors for backscatter or scatter radiation at all, and they withdrew it on reply. And their expert actually admitted that the detectors 20 on the bottom side would not serve as scatter detectors. And then that's when Viking really started developing its additional detector theory, the ones that can be between the sources and the cargo container, and this is where the impermissible gap filling. Even Viking recognized that this disclosure just was not present in CEPI, and so they directed the board, and the board didn't point to it specifically, but I think it's telling that the petitioner referred the board to CEPI's citation to U.S. Patent Number 6292533, which is at Appendix 350, and said this would provide some additional guidance on where you could position backscatter detectors. That patent is not incorporated by reference. They also refer the board to a secondary patent that says and argue that it gives additional guidance to a person of ordinary skill in the art how they might dispose the backscatter detectors. This is telling evidence that even the petitioner recognized that there is no express or inherent disclosure in CEPI on where or how to position the backscatter detectors, how many there are, how close they are to the sources relative to the cargo container, the energy levels that are necessary, whether they're in the same plane, whether they're shielded, whether they're obstructed. We don't have any information that is necessary to make the factual finding that the board did, and it's therefore not supported by substantial evidence. The director characterized the board's finding as implicit no less than five times in their briefing. We don't think that's sufficient for the board to justify its judgment that these claims are anticipated, and I refer again to the net money in case where this court has said differences between the prior art and the claimed invention, however slight, invoke concepts of obviousness, not anticipation. The board found anticipation, and it should be reversed. Thank you. Okay. I thank both counsel.